1  JOHN L. BURRIS, Esq./ State Bar #69888
   BENJAMIN NISENBAUM, Esq./State Bar #222173
2  LAW OFFICES OF JOHN L. BURRIS
   Airport Corporate Centre
3  7677 Oakport Street, Suite 1120
   Oakland, California 94621
4  Telephone:  (510) 839-5200
   Facsimile:   (510) 839-3882
5
   Attorneys for Plaintiffs Darnell Foster and
6  Rafael Duarte

7  MICHAEL J. HADDAD (State Bar No. 189114)
   JULIA SHERWIN  (State Bar No. 189268)
8  HADDAD & SHERWIN
   505 Seventeenth Street
9  Oakland, California  94612
   Telephone: (510) 452-5500
10 Fax: (510) 452-5510

11 Attorneys for Plaintiff Yancie Young

12

13                   UNITED STATES DISTRICT COURT

14               FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16 DARNELL FOSTER, RAFAEL DUARTE, and        Case No. 3:05-cv-3110 TEH
   YANCIE YOUNG, each individually and on
17 behalf of all others similarly situated,   **FIRST AMENDED COMPLAINT FOR
                                              CLASS ACTION AND INDIVIDUAL
18             Plaintiffs,                    RELIEF FOR INJURIES AND VIOLATION
                                              OF CIVIL RIGHTS.
19      vs.                                   JURY TRIAL DEMANDED**

20 CITY OF OAKLAND,  a municipal corporation;
21 RICHARD WORD, individually and in his
   official capacity as Chief of Police for the CITY
22 OF OAKLAND; J. FESTAG, individually and in
   his capacity as a police officer for the CITY OF
23 OAKLAND; WILLIAM BERGERON #7828,
24 individually and in his capacity as a police
   officer for the CITY OF OAKLAND; and,
25 DOES 1-25, inclusive,

26             Defendants.
27                                           /

28

FIRST AMENDED COMPLAINT FOR CLASS ACTION AND INDIVIDUAL RELIEF FOR INJURIES AND VIOLATION OF
CIVIL RIGHTS                                                                                    1

## JURISDICTION

1. This action arises under Title 42 of the United States Code, Sections 1983 and 1988. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in the County of Alameda, California, which is within this judicial district.

## PARTIES

2. Plaintiff herein, DARNELL FOSTER ("FOSTER"), is readily recognizable as an African-American male and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

3. Plaintiff herein, RAFAEL DUARTE ("DUARTE"), is readily recognizable as an Hispanic-American was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

4. Plaintiff herein, YANCIE YOUNG ("YOUNG"), is readily recognizable as an African-American male and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

5. Defendant City of Oakland ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California. The City operates under its authority the Oakland Police Department.

6. At all times mentioned herein, Defendant RICHARD WORD was employed by Defendant CITY as Chief of Police for the Defendant CITY. As Chief of Police, Defendant Word was a policy-making official for the City of Oakland with the power to make official or final policy for the Oakland Police Department. Defendant Word is being sued in his individual and official capacities.

7. At all times mentioned herein, Defendant officer J. FESTAG ("FESTAG") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

8. At all times mentioned herein, Defendant officer WILLIAM BERGERON #7828 ("BERGERON") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

9. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of DOES 1-25, inclusive, when they have been ascertained.

10. In engaging in the conduct described herein, Defendant police officers and the Chief of Police acted under the color of law and in the course and scope of their employment with the City. In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions and as police officers employed by Defendant CITY.

11. The acts and omissions of Defendants as set forth herein at all material times were pursuant to the actual customs, policies, practices and procedures of the City of Oakland and its police department.

12. This complaint may be pled in the alternative pursuant to FRCivP 8(e)(2).

STATEMENT OF FACTS

FACTUAL ALLEGATIONS REGARDING PLAINTIFF DARNELL FOSTER

13. On February 27, 2004, at around 3 p.m., Defendant Officer FESTAG stopped Plaintiff FOSTER in front of a small market, the "School Market", located near the corner of School Street and Pleitner Avenue in Oakland, Caifornia.

14. Plaintiff FOSTER lived in Carson City, Nevada at the time, but was visiting friends who lived in Oakland. Plaintiff FOSTER had purchased two Black and Mild cigars at the School Market shortly before Defendant Officer FESTAG and one other unknown Oakland Police Officer DOE stopped him. He possessed no contraband and was not engaged in any illegal activity whatsoever. Defendant Officers stopped Plaintiff FOSTER as he walked out of the School Market and asked him for his identification. Plaintiff FOSTER showed the officer his identification. The

officers then asked him whether he was on probation or parole.  Plaintiff FOSTER honestly replied that he was on probation. In fact, Plaintiff FOSTER, only two months remained of the five year felony unsupervised probation sentence for possession for sale of marijuana. Plaintiff FOSTER had served his probation sentence without incurring a single violation.  Plaintiff FOSTER told Defendant Officer FESTAG that he had only two months remaining on his probation.

15.     Defendant Officer FESTAG handcuffed Plaintiff FOSTER without explanation and escorted him to the back of his patrol vehicle, which was parked in front of the School Market.  Defendant Officer FESTAG forced Plaintiff FOSTER against the back of the patrol vehicle and ordered him to spread his legs.  Defendant Officer FESTAG searched Plaintiff FOSTER's pockets and found $22.  Defendant Officer FESTAG told Plaintiff FOSTER that the $22 would be confiscated.  Even though Plaintiff FOSTER had committed no crime and was not involved in any manner of illegal activity, Defendant Officer FESTAG informed Plaintiff FOSTER that the $22 found in Plaintiff FOSTER's pocket was proceeds of narcotics sales.  Defendant Officer FESTAG claimed that Plaintiff FOSTER was engaged in narcotics sales.  He handcuffed Plaintiff FOSTER and placed him in the rear of the police vehicle.

16.     The unknown Officer DOE ran Plaintiff FOSTER's name for a warrant check.  The search revealed no warrants for Plaintiff FOSTER.  Defendant Officer FESTAG searched the area around the market and located no evidence of any illegal activity relating to Plaintiff FOSTER.  In spite of the circumstances, which overwhelmingly indicated that Plaintiff FOSTER had not committed any crime, Defendant Officer FESTAG maliciously told Plaintiff FOSTER that he was going to violate his probation.  Defendant Officer FESTAG told Plaintiff FOSTER, "I think you're holding out on me," even though there was no basis to believe that Plaintiff FOSTER was engaged in illegal activity.

17.     Defendant Officer FESTAG removed Plaintiff FOSTER, still handcuffed, from the back of the patrol vehicle and bent him over the hood of the police car. Defendant Officer FESTAG opened the patrol vehicle's trunk and put on a purple latex glove.   He then returned to Plaintiff FOSTER and ordered him to bend over the hood of the patrol vehicle. Plaintiff FOSTER stood in the gutter, between the sidewalk and the police car, handcuffed, while Defendant Officer FESTAG

yanked Plaintiff FOSTER's gray sweat pants down to his knees.  Defendant Officer FESTAG then yanked Plaintiff FOSTER's boxer shorts down to his knees, exposing Plaintiff FOSTER's genitalia.  Humiliated and stunned, Plaintiff FOSTER felt Defendant Officer FESTAG's hands reach under his testicles.  Consistent with Plaintiff FOSTER's innocence, this offensive sexual battery showed that Plaintiff FOSTER possessed no contraband at all.

18.    To Plaintiff's shock and disbelief, Defendant Officer FESTAG told Plaintiff FOSTER "I'm going to do a butt-crack search, see if you got crack in your butt-crack."  Plaintiff FOSTER was forced to comply with Defendant Officer FESTAG's outrageous conduct.  Defendant Officer FESTAG spread Plaintiff FOSTER's butt-cheeks with his right hand and exposed the anus.  The unknown Officer DOE was also present, and both officers inspected Plaintiff FOSTER's anus.  Predictably, this unwarranted intrusive search failed to reveal any contraband.

19.    Defendant Officers pulled Plaintiff's underwear and sweat pants up and put him back in the rear of the patrol vehicle.  Despite the complete lack of evidence, Defendant Officer FESTAG told Plaintiff that he was going to take him to jail for "loitering with the intent to sell narcotics." Plaintiff FOSTER denied loitering and told the officers that he had just gone to the store, and was not involved in any drug activity.

20.    Defendant Officer FESTAG drove about two blocks away and stopped the patrol vehicle near the corner of Texas and Maple Streets.  One of the Defendant Officers asked Plaintiff FOSTER if he knew anyone who sold marijuana. When Plaintiff FOSTER said "no," the officers asked him to make an undercover drug purchase.   After Plaintiff FOSTER refused to become a snitch for the officers, Defendant Officer FESTAG told Plaintiff FOSTER "Help me so I can help you."

21.    Plaintiff FOSTER again asked the officers what he had done, and they again claimed that he had sold narcotics. When Plaintiff FOSTER truthfully stated that he had not sold narcotics, the officers insisted that Plaintiff FOSTER sign a citation for violating an Oakland Municipal Ordinance prohibiting loitering with the intent to sell narcotics.  Plaintiff FOSTER signed the citation and Defendant Officer released him.  Defendant Officers kept Plaintiff FOSTER handcuffed throughout the incident, which lasted nearly half an hour.

22. After being released, Plaintiff FOSTER returned to the same store, "School Market" and spoke with the store clerk. The clerk told Plaintiff FOSTER that one of the officers had come in and asked him how long Plaintiff FOSTER had been in the store. The clerk stated that he had told the officer Mr. FOSTER had come into the store just before the police came.

23. Plaintiff FOSTER returned home to Carson City, Nevada. Several months later, in May, Plaintiff FOSTER received a Notice to Appear in Criminal court in Oakland in September 2004 on the citation issued by Defendant Officer FESTAG. Plaintiff FOSTER called the Oakland Police Department Internal Affairs Division and filed an Internal Affairs complaint against Defendant Officer FESTAG sometime around July 2004. In order to defend against the false loitering charges, Plaintiff FOSTER traveled from Nevada to Oakland and appeared in court in Oakland on September 24, 2004. The charge against him was dismissed when neither Officer FESTAG, nor any other officer, appeared in court to substantiate the false allegation against Plaintiff FOSTER.

24. Plaintiff FOSTER alleges, on information and belief, that defendant officers had insufficient information, and no particularized facts, to support their stop, detention, and search of Plaintiff.

25. The detention, search, and arrest of Plaintiff FOSTER described herein was done without any just provocation or cause, proximately causing Plaintiff FOSTER's injuries and resulting damages.

26. Plaintiff FOSTER alleges on information and belief that defendant officers performed the public, intrusive anal-cavity search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches. Plaintiff further alleges he was singled out for this conscience-shocking search at least in part due to his race.

<u>FACTUAL ALLEGATIONS REGARDING PLAINTIFF RAFAEL DUARTE</u>

27. On the afternoon of March 9, 2005, Plaintiff RAFAEL DUARTE was a passenger in a car driven by a friend of his, Deandre Wash. Mr. Wash drove a late-80s model Toyota Supra. Two all-black Oakland Police vehicles, believed to be "task-force" vehicles, cut the Supra off without warning, forcing the car to a sudden stop on Baker Street between, between 62nd and 63rd Street in Oakland.

28. Although the Officers gave no orders to Plaintiff or Mr. Wash, at least one Defendant Officer DOE opened the passenger side door and yanked Plaintiff DUARTE from the vehicle. Although Plaintiff DUARTE had committed no crime, the DOE police officer forced him against the Toyota's hood and handcuffed him.  The DOE police officer then walked Plaintiff DUARTE to the front-side of a nearby house.   Several other unknown Defendant Officer DOES were also present at the scene.  The DOE police officer pat-searched Plaintiff DUARTE several times and then searched him thoroughly.  The search yielded no contraband.

29. Plaintiff DUARTE protested, stating that he had not committed any crime and was not in possession of any contraband.  Even though the searches performed by Officer DOE confirmed that Plaintiff DUARTE had committed no crime and possessed no contraband, one other Defendant Officer DOE 2 told the first Officer DOE that he thought he had seen Plaintiff DUARTE "stuff something in his pants."

30. Defendant Officers pulled Plaintiff DUARTE's pants down and ordered him to bend over.  To Plaintiff DUARTE's shock and humiliation, one of the Defendant Officer DOES spread Plaintiff DUARTE's butt-cheeks exposing his anus.  The search proved fruitless.  Plaintiff DUARTE possessed no contraband anywhere.

31. Plaintiff DUARTE was placed in the rear of the police vehicle.  Defendant Officers then removed Plaintiff's friend, Mr. Wash, from the vehicle and performed the same type of anal-cavity search on Mr. Wash.  That search also yielded no contraband whatsoever.  A crowd of people had gathered during the search, and Plaintiff DUARTE was acquainted with some of the people who witnessed the outrageous anal-cavity search of Plaintiff and his friend, Mr. Wash.

32. Plaintiff DUARTE was transported to Oakland City Jail where he was cited out after about two hours in custody. Plaintiff DUARTE told the officer who took his fingerprints about the anal-cavity search and was told by the officer to file an Internal Affairs complaint.  He was also told that his civil rights had been violated and that he should file a lawsuit.  No charges were ever filed against Plaintiff DUARTE.

33. Plaintiff DUARTE alleges, on information and belief, that defendant officers had insufficient information, and no particularized facts, to support their stop, detention, and search of Plaintiff.

34. The detention, search, and arrest of Plaintiff DUARTE described herein was done without any just provocation or cause, proximately causing Plaintiff DUARTE's injuries and resulting damages.

35. Plaintiff DUARTE alleges on information and belief that defendant officers performed the public, intrusive anal-cavity search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches. Plaintiff further alleges he was singled out for this conscience-shocking search at least in part due to his race.

### FACTUAL ALLEGATIONS REGARDING PLAINTIFF YANCIE YOUNG

36. On September 30, 2003, at approximately 11:30 p.m., Defendant BERGERON made a traffic stop of Plaintiff YOUNG at approximately the 2800 block of West Street in the City of Oakland. This traffic stop was without probable cause or other legal justification.

37. Defendant BERGERON opened Plaintiff's door, pulled Plaintiff YOUNG out of his car, and handcuffed him. This arrest was without probable cause or other legal justification.

38. Defendant BERGERON asked Plaintiff YOUNG if Plaintiff was on probation or parole, which Plaintiff denied. Defendant BERGERON told Plaintiff YOUNG that he "smelled marijuana" in Plaintiff's car and accused Plaintiff YOUNG of "smuggling pounds" of marijuana. Defendant BERGERON walked Plaintiff to the back of a police car, and while Plaintiff YOUNG was facing Defendant BERGERON, Defendant BERGERON pulled Plaintiff YOUNG's pants and underwear open and away from his body exposing Plaintiff's private parts. Defendant BERGERON shined his flashlight on Plaintiff YOUNG's privates, visually strip searching Plaintiff YOUNG for several seconds up to a minute. Next, Defendant BERGERON performed a pat down search of Plaintiff YOUNG, including feeling Plaintiff's private area through his pants. Defendant BERGERON also ordered Plaintiff YOUNG to remove his shoes, which Defendant BERGERON then searched. Defendant BERGERON found no contraband on Plaintiff YOUNG. Another officer,

Bernard Ortiz #8132, searched the interior of Plaintiff YOUNG's car while Defendant BERGERON searched Plaintiff.

39. Defendant BERGERON placed Plaintiff YOUNG in the back of a police car, still handcuffed, for well over one hour, during which time, Defendant BERGERON, other officers, and a police canine thoroughly searched Plaintiff's car. No drugs or other contraband were found in Plaintiff YOUNG's car.

40. Defendant BERGERON filled out a "field contact card" and released Plaintiff YOUNG with no charges recommended. Defendant BERGERON laughed as he released Plaintiff YOUNG and said he would "Catch you for something later." As Plaintiff YOUNG was surveying his ransacked car, Plaintiff YOUNG told Defendant BERGERON and other officers that he was going to file a complaint against them. Defendant BERGERON replied, "Go ahead, I'll just get acquitted like my Rider buddies!"

41. Plaintiff YOUNG did file a complaint against Defendant BERGERON with the Oakland Citizen's Police Review Board (CPRB), which investigated and sustained Plaintiff's complaint, finding that Defendant "BERGERON performed an unlawful strip search on Mr. YOUNG." The CPRB recommended to Defendant Chief of Police WORD that Defendant BERGERON receive training and a reprimand.

42. Defendant BERGERON is among a group of only 10 Oakland police officers who received four or more complaints against them with the CPRB between January 1, 2003 and June 30, 2005.

43. Defendants' seizure and search of Plaintiff YOUNG was without a Warrant and without other legal cause. Defendants' use of force against Plaintiff YOUNG was excessive and objectively unreasonable under the circumstances.

44. Defendants' unreasonable seizures, uses of excessive force, and public strip search of Plaintiff were done at least in part because of Plaintiff's race and/or ethnicity. Plaintiff is African-American.

45. At all material times, and alternatively, the actions and omissions of each defendant with respect to each plaintiff herein were intentional, wanton and/or willful, conscience shocking,

reckless, malicious, deliberately indifferent to Plaintiff's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

## DAMAGES

46. As a proximate result of Defendants' conduct, Plaintiffs suffered severe and extreme emotional distress, fear, terror, anxiety, humiliation, invasion of privacy and bodily integrity, and loss of their sense of security, dignity, and pride as United States citizens.

47. Plaintiffs were assaulted, detained, handcuffed, illegally searched in the anus and privates in public, and falsely arrested by the defendant officers noted herein without any just provocation or probable cause. Plaintiff FOSTER defended against the false charge of loitering and traveled from Nevada to Oakland to make a court appearance at which Defendant Officer FESTAG did not bother to appear.

48. The conduct of defendant officers was malicious, wanton, reckless, and oppressive. Plaintiffs are therefore entitled to an award of punitive damages against said defendant police officers.

49. Plaintiffs found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiffs are therefore entitled to an award of all attorney's fees incurred in relation to this action for violation of their civil rights.

## CLASS ALLEGATIONS

50. Plaintiffs are informed and believe, and thereon allege, that Defendants have followed, and continue to follow, a custom, policy, and/or practice of strip searching individuals on public streets without legal cause and in violation of the United States and California Constitutions and other statutes and regulations. In addition to the types of strip searches described by Plaintiffs herein, Plaintiffs are informed and believe and thereon allege that other individuals further have been subjected to physical body cavity searches, including anal penetration, by Defendants and/or other officers of the Oakland Police Department, including but not limited to as alleged by plaintiffs in Taylor, et. al. v. City of Oakland, Officer B. Estrada, et. al., no. C-04-4843 MHP, and Rider v. City of

Oakland, Officer B. Estrada, Officer William BERGERON, et. al., No. C-05-3204 MHP. Plaintiffs are informed and believe, and thereon allege, that Defendants have disproportionately singled out young men of color, predominantly African-American and Latino, for such illegal searches and seizures. Additionally, Defendant City of Oakland's police training program and written policies with respect to public strip searches, including both visual and physical body cavity searches, has been, and continues to be unconstitutional and deliberately indifferent to the rights and safety of Plaintiffs, the class described herein, and the public.

51. The conduct of Defendants with respect to Plaintiffs FOSTER, DUARTE, AND YOUNG, as described herein, was also pursuant to the customs, policies, and/or practices set forth in the preceding paragraphs and as further described below.

52. Plaintiffs FOSTER, DUARTE, and YOUNG bring this action on their own behalf and on behalf of all persons similarly situated pursuant to FRCivP 23.

53. The proposed class consists of all persons, in the period from and including August 1, 2003 to the present and continuing until this matter is adjudicated and the unlawful customs, policies, and/or practices complained of herein cease, who were seized and subjected to one or more strip and/or visual body cavity and/or physical body cavity searches in public without legal basis.

54. In accordance with F.R.Civ.P. 23, Plaintiffs are informed and believe and thereon allege, that the class is so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact number of class members.

55. Plaintiffs are informed and believe and thereon allege, these inappropriate and illegal searches and customs, policies, and/or practices have existed for years and will continue to affect more potential class members in the future.

56.     There are questions of law and fact common to the class of plaintiffs, including but not limited to: the legality of strip searching individuals in public and the legality of Defendant City of Oakland's training program and written policies with respect to public strip searches, including both visual and physical body cavity searches.

57.     The claims of the representative Plaintiffs FOSTER, DUARTE and YOUNG, are typical of the claims of the class of plaintiffs. Representative Plaintiffs FOSTER, DUARTE, and YOUNG have the same interests and has suffered the same types of injuries as all of the class members. The claims of Plaintiffs FOSTER, DUARTE, and YOUNG and the class members arise from the same customs, policies, and/or practices of the Defendants that have damaged all class members. Plaintiff FOSTER, DUARTE, and YOUNG's interests are consistent with, and not antagonistic to, the interests of the class.

58.     The named Plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Plaintiffs' counsel are experienced in litigating federal civil rights cases, including cases against the City of Oakland, alleging unlawful and inappropriate searches. Counsel have the resources and expertise to prosecute this action.

59.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, and would establish incompatible standards of conduct for Defendants.

60.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making final injunctive and declaratory relief with respect to the class as a whole appropriate.

61.     Additionally, prosecution of separate actions would create a risk of adjudications with respect to individual members of the class that would, as a practical matter, be dispositive of the

interests of the other members who are not parties, or would substantially impair or impede their ability to protect their interests.

## FIRST CAUSE OF ACTION
(42 U.S.C. Section 1983)
(Against Defendants FESTAG, BERGERON, and DOES 1-10)

62.  Plaintiffs hereby re-allege and incorporate by reference herein all other paragraphs of this Complaint.

63.  In doing the acts complained of herein, Defendants FESTAG, BERGERON, and DOES 1-10, inclusive, and/or each of them, acted under color of law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to:

   a.  The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

   b.  The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

   c.  The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

   d.  The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

   e.  The right to be free from interference within the zone of privacy, as protected by the Fourth, Ninth, and Fourteenth Amendments to the United States Constitution;

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

(42 U.S.C. section 1983)
(Against Defendants CITY, RICHARD WORD, and DOES 11-25)

64. Plaintiffs hereby re-allege and incorporate by reference herein all other paragraphs of this Complaint.

65. Plaintiffs are informed and believe and thereon allege that high ranking City of Oakland officials, including high ranking police supervisors, such as Defendant Richard WORD, DOES 11 through 25, and/or each of them, knew and/or reasonably should have known about repeated acts of misconduct by Defendants FESTAG, BERGERON, and DOES 1-10, and/or each of them, including illegal public strip search and anal-cavity searches without legal justification.

66. Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants WORD, DOES 11-25, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said officers.

67. Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants FESTAG, BERGERON, and DOES 1-10, and/or each of them, Defendant WORD, DOES 11-25, and/or each of them, encouraged these officers to continue their course of misconduct, resulting in the violation of Plaintiffs' rights as alleged herein.

68. The aforementioned acts and/or omissions and/or deliberate indifference by high ranking City of Oakland officials, including high ranking City of Oakland Police Department supervisors, Defendants WORD, DOES 11-25, and each of them resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

    a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

    b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

    c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

    d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

    e. The right to be free from interference within the zone of privacy, as protected by the Fourth, Ninth, and Fourteenth Amendments to the United States Constitution;

69. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
(42 U.S.C. section 1983)
(Against Defendant CITY OF OAKLAND)

70. Plaintiffs hereby reallege and incorporate by reference herein all other paragraphs of this Complaint.

71. As against Defendant CITY, Defendant WORD and/or DOES 11-25 in his/their capacity as official policy-maker(s) for the CITY OF OAKLAND, Plaintiffs further allege that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the CITY OF OAKLAND Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens.

72.     Plaintiffs are further informed and believe and thereon allege that the acts and omissions alleged herein are the direct and proximate result of the deliberate indifference of Defendants CITY, WORD, DOES 11-25, and each of them, to repeated acts of police misconduct, including intrusive, humiliating, public visual and physical anal cavity searches without probable or reasonable suspicion of criminal wrongdoing, which were tacitly authorized, encouraged or condoned by the Defendant CITY, Defendant WORD, DOES 11-25, and each of them.

73.     The injuries and damages to Plaintiffs as alleged herein were the foreseeable and proximate result of said customs, policies, patterns and/or practices of Defendant CITY, Defendant WORD, DOES 11-25, and each of them.

74.     Plaintiffs are further informed and believe and thereon allege that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision and/or discipline of members of the Defendant OAKLAND Police Department.

75.     Plaintiffs are further informed and believe and upon such information and belief allege that Plaintiffs' damages and injuries were caused by customs, policies, patterns or practices of Defendant CITY, Defendant WORD, DOES 11-25, and each of them, of deliberate indifference in the training, supervision and/or discipline of Defendants FESTAG, BERGERON, and DOES 1-10, and/or each of them.

76.     The aforementioned customs, policies or practices of Defendant CITY, Defendant WORD, DOES 11-25, and each of them, resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

a.  The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

    b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

    c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

    d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

    e. The right to be free from interference within the zone of privacy, as protected by the Fourth, Ninth, and Fourteenth Amendments to the United States Constitution.

77. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## JURY DEMAND

78. Plaintiffs hereby demand a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1. For general damages in a sum of $1,000,000.00 each;
2. For special damages in a sum according to proof;
3. For punitive damages in a sum according to proof;
4. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988 and other applicable law;
5. For cost of suit herein incurred; and
6. For injunctive relief, including but not limited to the following:

    i. An order declaring Respondents' customs, policies, and/or practices concerning strip and/or visual body cavity searches of people detained and/or arrested by Oakland Police law enforcement officers and/or employees to be unlawful;

      ii.     An order prohibiting Respondents and their officers from unlawfully interfering with the rights of Claimant, class members, and other people to be free from unreasonable searches and seizures and serious invasions of privacy;

      iii.    An order requiring Respondents to rescind any and all of their policies, practices, procedures, and/or customs allowing unlawful strip and/or visual body cavity searches of people detained and/or arrested by Oakland Police law enforcement officers and/or employees;

      iv.    An order requiring Respondents to institute and enforce appropriate and lawful policies and procedures prohibiting unlawful strip and/or visual body cavity searches of people detained and/or arrested by Oakland Police law enforcement officers and/or employees;

      v.     An order requiring Respondents to train all officers and personnel of the Oakland Police Department concerning unlawful strip and/or visual body cavity searches of people detained and/or arrested by Oakland Police law enforcement officers and/or employees.

7. For such other and further relief as the Court deems just and proper.

Dated: September 20, 2005　　　　　　　　　　The Law Offices of John L. Burris

　　　　　　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　John L. Burris, Esq.
　　　　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs Foster, Duarte,
　　　　　　　　　　　　　　　　　　　　　　　and class members

Dated: September 20, 2005　　　　　　　　　　Haddad & Sherwin

　　　　　　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　Michael J. Haddad, Esq.
　　　　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs Young
　　　　　　　　　　　　　　　　　　　　　　　and class members