UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNELL FOSTER, RAFAEL DUARTE, and YANCIE YOUNG, each individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>  v.<br><br>CITY OF OAKLAND ET AL.,<br><br>                Defendants. | No. C 05-03110 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Plaintiffs' Motion for Class Certification** |

     Plaintiffs Darnell Foster, Rafael Duarte, and Yancie Young have brought a putative class action pursuant to 28 U.S.C. section 1983 against the City of Oakland ("Oakland"); Richard Word, individually and in his capacity as the Oakland Chief of Police; Oakland police officers J. Festag, William Bergeron, individually and in their official capacities as police officers; and Does 1–25, alleging that defendants violated plaintiffs' constitutional rights through a policy and practice of performing strip searches and body-cavity searches in public. Plaintiffs seek certification of three subclasses: 1) individuals subjected to a strip search and/or visual body-cavity search in public by Oakland Police officers from August 1, 2003 to present and until this matter is adjudicated; 2) individuals subjected to a physical body-cavity search in public by Oakland Police officers from August 1, 2003 to present and until this matter is adjudicated; 3) individuals, based in part on their race and/or national origin, subjected to a strip search, visual body-cavity search or physical body-cavity search in public by Oakland Police officers from August 1, 2003 to the present and until this matter is adjudicated. Plaintiffs seek both injunctive relief and damages on behalf of the putative class. Now before the court is plaintiffs' motion for class certification pursuant to Federal Rule of

Civil Procedure 23. After considering the parties' arguments and submissions and for the reasons set forth below, the court rules as follows.

BACKGROUND[1]

I.   The Parties

   A.   Plaintiff Darnell Foster

Plaintiff Foster is an African-American man. On February 27, 2004, Foster was visiting a friend in Oakland, California. At that time, he had served all but two months of a five year unsupervised probation sentence without incurring any violations.

At around 3 p.m. of that day, Officer Festag and another unknown officer stopped Foster outside the School Market on Oakland's School Street near Pleitner Avenue. The officers asked Foster for identification, which he showed to them. The officers also asked whether Foster was on probation or parole, which he answered affirmatively. Officer Festag then handcuffed Foster and forced him against the back of his patrol vehicle parked in front of the School Market. Foster was ordered to spread his legs and Officer Festag searched Foster's pockets. No contraband was found. Officer Festag then guided Foster into the rear of the patrol vehicle. The officers ran a warrant check and searched the area for evidence of illegal activity. The searches revealed no warrants or evidence of wrongdoing.

Foster was then removed from the patrol vehicle by Officer Festag, who forced Foster over the hood of the vehicle. Wearing a latex glove retrieved from the vehicle's trunk, Officer Festag pulled Foster's pants and underwear down to his knees. Officer Festag proceeded to search around Foster's testicles using his gloved hand. The officer also spread Foster's buttocks and visually searched Foster's anus, stating "I'm going to do a butt-crack search, see if you got crack in your butt-crack." Compl. ¶ 5. No contraband was discovered.

The officers then pulled Foster's pants and underwear back up and returned him to the rear of

the vehicle. Officer Festag drove about two blocks and stopped the patrol vehicle to request that Foster make an undercover drug purchase. Foster refused to work undercover for the officers and repeatedly denied wrongdoing. The officers then issued Foster a citation for loitering with the intent to sell narcotics before releasing him.

Several months later, in May, Foster received a Notice to Appear in criminal court in Oakland on the citation issued by Officer Festag. The charge was subsequently dismissed due to the absence of both the officers to substantiate the allegation against Foster. Foster filed an Internal Affairs complaint against Officer Festag in July 2004. On August 1, 2005 Foster and another plaintiff filed a complaint alleging violations his civil rights under 42 U.S.C. section 1983.

B.     Plaintiff Rafael Duarte

Plaintiff Duarte is an Hispanic-American man. On the afternoon of March 9, 2005, Duarte and a friend were forced to a stop on Oakland's Baker Street, between 62nd and 63rd Streets.

Unknown officers emerged from the two vehicles and pulled Duarte from the friend's car without giving any orders. Duarte was handcuffed and forced against the hood. Duarte was then escorted by the first officer to the front of a nearby house, where several other unknown officers were also present. The first officer repeatedly pat-searched Duarte, but the search yielded no contraband.

A second officer then informed the first officer that he thought he had seen Duarte "stuff something down his pants." Compl. ¶ 7. The officers pulled down Duarte's pants and ordered him to bend over. Duarte's buttocks were spread, permitting visual inspection of his anus. No contraband was found. Duarte was placed in the rear of a police vehicle. The officers then performed a strip and visual body cavity search on Duarte's friend. That search also yielded no contraband. During the searches of the two men, a crowd had begun to gather around the scene, including some people with whom Duarte was acquainted. The individuals witnessed the searches of both men.

Duarte was taken to Oakland City Jail and cited after about two hours in custody. No

3

charges were ever filed against Duarte. On August 1, 2005, Duarte and other plaintiffs filed charges alleging violations his civil rights under 42 U.S.C. section 1983.

### C.   Plaintiff Yancie Young

Plaintiff Young is an African-American man. At approximately 11:30 p.m. on September 30, 2003, Young was pulled over by Officer Bergeron around the 2800 block of West Street in Oakland. Officer Bergeron opened Young's car door, pulled him out of the car, and handcuffed him. Officer Bergeron asked Young if he was on probation or parole, which Young denied   Officer Bergeron insisted that he smelled marijuana in Young's car and suggested that Young was smuggling large quantities of the drug.

Officer Bergeron then took Young to the back of a police car. While facing Young, he pulled down Young's pants and underwear, revealing Young's genitalia. Then Officer Bergeron shined a flashlight directed at Young's genitalia, visually inspecting Young for up to a minute. Officer Bergeron next performed a pat-search of Young, including ordering Young to remove his shoes and feeling Young's private area through his pants. Another officer searched Young's car during the search of Young's person. No contraband was found.

Officer Bergeron seated Young in the back of a police car, still handcuffed, where he sat for over one hour. During that time, Officer Bergeron, other officers, and a police canine searched Young's car. That search produced no evidence of criminal activity.

No charges were filed against Young. Young subsequently filed a complaint with the Citizens' Police Review Board. The Board found that Officer Bergeron performed an unlawful strip search of Young. Young filed a complaint on August 1, 2005.

### D.   Defendants

Defendant City of Oakland is a municipal corporation, operating the Oakland Police Department and employing the additional defendants named below. Defendant Richard Word is Chief of Police for the City of Oakland. Plaintiffs have sued him in both his individual and official

4

capacities. Defendants J. Festag, William Bergeron, and defendants Does 1-25 were police officers for the City of Oakland at all times mentioned herein. They have been sued in both their individual and official capacities.

### 1. Oakland Police Department's Policy Before 2004.

The Oakland Police Department's 1998 policy, entitled "Strip Searches, Visual Body-Cavity Searches, and Physical Body-Cavity Searches," barred such searches in public, unless there was an urgent need to perform the search and no privacy was reasonably available. Pls.' Am. Mot. for Class Certification at 11. According to Captain Israel, who wrote that policy and trained fellow officers in enacting it, searching suspects in the "V" of a car door was acceptable where justified by some "urgent need." Israel Dep., Pls.' Exh. E at 28:11-29:14. Captain Israel stated that examples of an "urgent need" to perform such searches included the possibilities of the suspect concealing a weapon or some contraband that might be ingested or forced into the rectum. Id. at 30:2-30:10. The policy did not require reasonable suspicion or probable cause. Id. at 31:3-31:9. There was also no consideration as to the types of charges for which the suspect was being arrested. Id. at 31:15-31:18.

### 2. Oakland Police Department's Amended Policy.

In 2004, the Oakland Police Department amended its policy on strip and body-cavity searches. The amendments came in response to public concerns regarding the Department's practice of carrying out such searches. The Department publicly identified a "long-standing and problematic practice of conducting strip searches in the field." Pls.' Exh. C at 4.

The revised policy added requirements for reasonable suspicion that the subject is concealing a weapon or contraband. Additionally, the revised policy addressed the subject's privacy, stating that strip searches and body-cavity searches "must be conducted so that the search cannot be easily observed by the public." The policy required that "reasonable efforts must be made to provide as much privacy as possible given the circumstances." Pls.' Exh. E, Israel Dep. at 80:23-81:9.

### 3. Oakland Police Department's Alleged Practice.

Plaintiffs allege that there is a widespread practice of public strip and body-cavity searches within the Oakland Police Department that deviates from the Department's recently revised policy.

5

Plaintiffs claim that this practice occurs without regard to the privacy of subjects being searched. Subjects genitalia, buttocks, and/or anuses are exposed, often without any screen from public view. This alleged practice targets racial minorities—especially Hispanic- and African-Americans.

II.     Procedural History

Plaintiffs Foster and Duarte filed the present action on August 1, 2005. Pursuant to stipulations, plaintiffs filed an amended complaint on September 22, 2005 adding plaintiff Young. Additionally, the following actions were related to this action: (1) Rider v. City of Oakland, No. C 05-3204 MHP, related on October 6, 2005; (2) Taylor v. City of Oakland, No. C 04-4843 MHP, related on October 6, 2005; (3) Moore v. City of Oakland, No. C 06-02426 MHP, related on July 12, 2006.

On behalf of themselves and a group of similarly-situated persons, plaintiffs charge that defendants have a pattern and practice of public body-cavity searches, violating plaintiffs' constitutionally guaranteed rights including due process, freedom from unreasonable searches and seizures, freedom from excessive use of forces by police officers, equal protection of the laws, and freedom from interference within their zones of privacy.

LEGAL STANDARD

A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule 23(a), as well as at least one of the requirements of Rule 23(b). Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e., typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (i.e., adequacy of representation). Fed. R. Civ. P. 23(a). In addition to satisfying these prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2) or (3). See Rule 23(b); Amchem Products, Inc. v. Windsor,

521 U.S. 591, 614 (1997). Rule 23(b)(2) permits class actions for declaratory or injunctive relief where the party opposing the class "has acted or refused to act on grounds generally applicable to the class." Rule 23(b)(2).

The party seeking class certification bears the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1188 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001); Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). However, in adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied. See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). The merits of the class members' substantive claims are generally irrelevant to this inquiry. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974); Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).

DISCUSSION

Plaintiffs seek certification of three subclasses: 1) individuals subjected to a strip search and/or visual body-cavity search in public by Oakland Police officers from August 1, 2003 to present and until this matter is adjudicated; 2) individuals subjected to a physical body-cavity search in public by Oakland Police officers from August 1, 2003 to present and until this matter is adjudicated; 3) individuals, based in part on their race and/or national origin, subjected to a strip search, visual or physical body-cavity search in public by Oakland Police officers from August 1, 2003 to the present and until this matter is adjudicated. They ask the court to certify their claims for damages as well as injunctive relief under Rule 23(b)(1) and 23(b)(2).

Pursuant to Rule 23, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As a general rule, classes numbering greater than forty-one individuals satisfy the numerosity requirement. See 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[1][b] (3d ed. 2004). Although plaintiffs need not allege the exact number or identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number of parties involved is not sufficient to satisfy the numerosity requirement. See Freedman v. Louisiana-Pac. Corp., 922 F. Supp. 377, 398 (D. Or. 1996); 7 Wright, Miller, & Kane, Federal Practice and Procedure § 1762 (3d ed. 1995). Here, plaintiffs have identified sixteen potential class members who were subject to either a public strip search and/or a public body-cavity search. Nine plaintiffs in this case and related cases have filed suit based on the alleged practice of public strip and body-cavity searches by the Oakland Police Department; one case has been dismissed. Seven additional potential class members have been disclosed in the production of Internal Affairs complaints filed by alleged subjects of public strip searches. Word Dep. at 8:10–10: 10. As defendants note, one of the putative class members, James Taylor, filed suit based on a search that occurred on November 13, 2002, one year prior to the dates in the class definition. According to this tally, plaintiffs have presented evidence of a sixteen alleged victims that meet the class definition. They further speculate that more potential class members are likely to be uncovered but provide no evidence as to how many more class members there may be.

While there is no specific numerical requirement in the text of Rule 23, courts have repeatedly held that classes of less than twenty members do not satisfy the numerosity requirement. See, e.g., General Tel. Co. of the Northwest, Inc. v.  EEOC, 446 U.S. 318, 330 & n.14 (1980) (citing, with approval, cases in which numerosity was not met with as many as forty class members); Harik v.  Cal.  Teacher's Ass'n, 326 F.3d 1042, 1052 (9th Cir. 2003) (vacating certification of classes with less than ten members). Plaintiffs have produced no evidence that the size of the potential class is larger than fifteen members. The text of Rule 23(a)(1) instructs the court to certify a class only where joinder of all of the potential plaintiffs would be impracticable. In this case, joinder seems viable: all potential plaintiffs are in the same geographic area, and the small number

8

of potential class members suggests that doing so would not be unduly burdensome. Accordingly, the court finds that plaintiffs have not satisfied the numerosity requirement at this time.

Therefore, the court DENIES plaintiffs' motion for class certification without prejudice to their filing another such motion at a later time if plaintiffs can present evidence of a sufficiently large number of potential class members.

CONCLUSION

Based upon the foregoing, plaintiffs' motion to certify a class is DENIED.

IT IS SO ORDERED.

Dated:   January 27, 2007

_____

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

ENDNOTE

1. Unless otherwise noted, all facts are taken from the first amended complaint (the "Complaint" or "FAC").